## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

IN RE:

SERVICE ONE, LLC

                            Debtor

Case No. 22-40503
Chapter 11
(Subchapter V)

## TRUSTEE'S EMERGENCY MOTION FOR AUTHORITY TO PAY
## PRE-PETITION CLAIMS OF CERTAIN CRITICAL VENDORS

Mark A. Weisbart, the Subchapter V trustee of Service One, LLC (the "Trustee") files this Emergency Motion for Authority to Pay Pre-Petition Claims of Certain Critical Vendors (the "Motion"), pursuant to sections 105(a), 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* (the "Bankruptcy Code") and Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking entry of an order authorizing, but not directing, the Trustee to pay the pre-petition claims of certain creditors which constitute critical vendors to the continued operation of the debtor's business. In support of the relief requested, the Trustee would show the Court as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The relief requested herein is authorized under Sections 105, 363 and 364 of Bankruptcy Code and Bankruptcy Rules 6003 and 6004(h).

### FACTUAL AND PROCEDURAL BACKGROUND

2.      On April 21, 2022 (the "Petition Date"), Service One, LLC (the "Debtor") filed a voluntary petition under chapter 11 of the Bankruptcy Code. The Debtor's corporate headquarters is located at 4801 Keller Springs Road, Addison, Texas 75001 (the "Office"). Per its designation

on its Petition, the Debtor is proceeding under Subchapter V of Chapter 11 in accordance with section 1182 of the Bankruptcy Code (the "SubV Designation").

3.      Thereafter, Mark A. Weisbart was appointed the Subchapter V Trustee for this case pursuant to section 1183 of the Bankruptcy Code.

4.      Due to disputes between the Debtor's two members, Sandra Perry and Charles Tomasello, each of whom own a 50% membership interest in the Debtor, the Debtor on April 25, 2022, filed its *Motion to Remove the Debtor from Possession and Authorize Subchapter V Trustee to Operate the Business of the Debtor* [Doc 14] (the "Removal Motion") seeking to be removed as a debtor in possession pursuant to section 1185 of the Bankruptcy Code and requesting that the Trustee be authorized to manage and operate the Debtor's business pursuant to section 1183(b)(5).

5.      By Order entered on April 29, 2022 [Doc 35], the Court granted the Removal Motion and vested the Trustee with authority to operate the Debtor's business and manage its assets in accordance with 11 U.S.C. § 1183(b)(5).

6.      The Debtor operates a construction business primarily involved in the remodel and renovation of single-family homes for customers operating in the "single family rental space." Currently, the Debtor has seventeen (17) employees and utilizes eight (8) independent contractors in its day-to-day management and operations. In addition to these individuals, the Debtor engages, as of the Petition Date, the services of approximately forty-six (46) subcontractors (the "Subcontractors") to provide the labor and skills required to perform the necessary tasks to undertake and complete its construction projects (the "Projects"). Currently, the Debtor is involved in about eighty (80) Projects at various stage of completion.

7.      The Subcontractors are a critical component in the Debtor's operations as they perform the majority of work on the Projects. But for the Subcontractors' services the Debtor would not be able to complete its Projects nor continue operating its business.

8.    Likewise, the Debtor would not have the ability to continue business operations without building materials, utility and payroll services supplied by various vendors (collectively, the "Vendors") needed to maintain its operations and complete its Projects.

9.    In the ordinary course of its business, the Debtor has historically maintained a close relationship with, and relied upon, the Subcontractors and Vendors that are identified on attached Exhibit "A" (collectively, the "Critical Vendors"). Exhibit A also provides the respective amounts each Critical Vendor was owed as of the Petition Date (the "Vendor Balances") for the services rendered and/or materials supplied pre-petition (the "Services and/or Supplies").  The Debtor has identified each of the Subcontractors and Vendors as a "critical vendor" since without the Services and/or Supplies each of them provides the Debtor would not have the ability to complete the Projects and fulfill its obligations to its customers. While it's possible that the Debtor could replace Subcontractors, the time required to find replacements given the scarcity of experienced people in the construction industry would cause unacceptable delays that would jeopardize the Debtor's relationships with its customers. Replacing Vendors to provide supplies would be more problematic as many of Debtor's customer agreements require use of specific vendor materials and supplies. Moreover, to the extent other vendors could be found the Debtor would lose product discounts that it currently receives.

10.    Many, if not most, of the Subcontractors have indicated that they are unwilling to continue to provide Services and/or Supplies to the Debtor without payment of the amounts due them for pre-petition work and/or materials. Moreover, many of the Vendors have cutoff Debtor's account from further purchases. Without the ability to maintain its relationships with the Subcontractors and Vendors to ensure their continued Services and/or Supplies the Debtor will be unable to timely complete its Projects.

11.    The failure to timely complete the Projects would immediately and irreparably

damage the Debtor's relationship with its customers. The resulting damage to these relationships would result in significant loss of funds due on Projects and the ability to be garner future customer contracts, and the eventual cessation of the Debtor's business operations.  The nature and importance of the Subcontractors and Vendors and the Services and/or Supplies they provide is as follows:

    a.    <u>Subcontractors</u> – these individuals and companies provide the construction labor and skills, and, with regard to a few, materials necessary to complete the Debtor's Projects.  Any further delay in compensating the Subcontractors could likely cause the Subcontractors to cease providing the Debtor Services and/or Supplies at any given moment. Such cessation would delay completion of Projects and would irreparably compromise the company's ability to timely fulfill those Projects. There is significant risk that the Debtor could not replace its Subcontractors in sufficient time and numbers to avoid the consequences of losing the Subcontractors.

    b.    <u>Vendors</u> – these companies provide the Supplies and materials required to complete the Projects. Given the number of Debtor's open projects the Debtor requires significant volume of materials and Supplies to maintain its completion schedule and to fulfill its agreements. There are no adequate replacements for the Vendors.

12.     If the Debtor is not able to continue to do business with the Subcontractors and the Vendors, it would be very difficult, if not impossible in some cases, time consuming and costly for the Debtor to find replacement Subcontractors and Vendors in sufficient time to fulfill its construction agreements.

13.     Each of the Subcontractors and Vendors has claims for providing essential services and materials to the Debtor that were received by the Debtor before the Petition Date and/or essential Services and Supplies that were provided to, or on behalf of, the Debtor before the Petition Date.  It is essential for the Debtor to continue its relationship with the Subcontractors and Vendors to ensure that its operations remain stable during this chapter 11 case and that the Debtor continues to maintain its ability to timely complete its construction projects and fulfill its construction agreements.

14.     Therefore, the Trustee seeks entry of an order authorizing, but not directing, the

Debtor to pay, in its sole discretion, the Vendor Balances (collectively, the "Vendor Claims").

15.     Given the importance of the Services and/or Supplies the Subcontractors and Vendors provide to the Debtor's business operations, and to ensure that the Debtor continues to receive these Services and/or Supplies, it is imperative that the Debtor be authorized to pay the Vendor Claims.  As discussed below, the Debtor's failure to receive the Services and/or Supplies timely and without interruption from the Subcontractors and Vendors will have an immediate and substantial adverse impact upon the Debtor's operations and, in turn, the Debtor's ability to reorganize.

16.     To identify Subcontractors and Vendors as critical vendors, the Debtor's management reviewed and analyzed which subcontractors and vendors were most essential to its continued and uninterrupted operations. This analysis included the following: (a) whether a particular vendor is a "sole source" provider; (b) whether a subcontractor or vendor provides Services or Supplies that the Debtor requires to continue its operations, and whether the cost or time associated with finding a replacement vendor would result in greater losses to the estate than paying such subcontractor or vendor's prepetition claim; (c) whether the Debtor receives advantageous pricing or other terms from a vendor because such vendor provides goods or services on a standardized, system-wide basis; (d) whether certain customizations prevent the Debtor from obtaining the vendor's goods or the subcontractor's services from alternative sources within a reasonable timeframe; (e) if a subcontractor or vendor is not a sole source provider, whether the Debtor has sufficient goods in inventory to continue operations while a replacement vendor or subcontractor is secured; (f) whether a vendor or subcontractor is financially dependent on the Debtor, and nonpayment could put the vendor or subcontractor out of business, cutting off any post-petition supply of goods or services to the Debtor; and (g) whether a vendor, meeting any of the above criteria, is likely to refuse to provide goods or services to the Debtor post-petition if its

prepetition claims are not paid.

17.    Based upon communications with the Subcontractors and Vendors, the Debtor would be unable to timely, if at all, obtain the necessary Services and/or Supplies from the Subcontractors or Vendors without payment of the Vendor Claims or on reasonable credit terms absent payment of their prepetition claims, thereby effectively refusing to do business with the Debtor.

18.    As noted above, the Subcontractors and Vendors provide Services and/or Supplies that are necessary for the continued operation of the Debtor.  Indeed, the Subcontractors and Vendors, together with the Debtor's customers and employees, are the lifeblood of the Debtor's operations, without which the Debtor would not be able to properly, if at all, operate.  Indeed, the Debtor believes that payment of these Vendor Claims is vital to the Debtor's reorganization efforts because in many instances, the Subcontractors and Vendors are the only source from which the Debtor can procure the Services and/or Supplies of a required quality, within a timeframe, and at a price that will permit the Debtor to continue is business operations.  Absent payment of the Vendor Claims, the Debtor has been advised that the Subcontractor and Vendors will decline to provide the Debtor any further Services and/or Supplies post-petition.

19.    Accordingly, it is essential that the Debtor maintain its relationships with the Subcontractors and Vendors to allow the continued and uninterrupted work on its construction projects and to work towards a successful reorganization.  Payment of the Vendor Claims will ensure the Debtor's ability to obtain the Services and/or Supplies necessary to maintain stable operations and will enable the Debtor to meet its obligations to customers, thereby retaining goodwill in the community and demonstrating that the Debtor is able to operate effectively during this chapter 11 case. Any disruption to the Debtor's operation and its relationships with the Subcontractors and Vendors would cripple the Debtor's operations, causing irreparable harm to

the Debtor's reputation and its ability to meet its customers' needs. This, in turn, would significantly jeopardize, if not completely hinder, the Debtor's ability to reorganize and would negatively impact its customers.

### RELIEF REQUESTED

20.     By this Motion, the Debtor respectfully requests the entry of an order (a) authorizing, but not directing, the Debtor to pay the Vendor Claims of those Subcontractors and Vendors identified on attached Exhibit A. As discussed below, this relief is necessary to the Debtor's continued business operation and its ability to effectuate a successful reorganization.

### BASIS FOR RELIEF REQUESTED

**A.  Sections 105(a), 363(b) and 364 of the Bankruptcy Code
Provide a Basis for the Relief Requested.**

21.     Section 363(b)(1) of the Bankruptcy Code provides that after notice and a hearing the trustee "may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  In addition, section 105(a) of the Bankruptcy Code grants bankruptcy courts broad statutory authority to enforce the Bankruptcy Code's provisions either under the specific statutory language of the Bankruptcy Code or under equitable common law doctrines.  Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).  In authorizing payments of certain prepetition obligations, courts rely on several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code.

22.     Courts have repeatedly authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so.  See, e.g., *In*

*re Columbia Gas Sys., Inc.,* 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy Code to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtor).

23.    Similarly, where the relief at issue involves a request impacting the trade terms among the Debtor and the vendor and the possibility of the extension of unsecured credit by vendors to be paid under the Order, the relief may, where the appropriate showing has been made, be approved pursuant to section 364 of the Bankruptcy Code. See *In re UAL Corp.*, No. 02-48191 (Bankr. N.D. Ill. Dec. 11, 2002) (essential trade motion relying upon Bankruptcy Code Section 363 is "completely consistent with the Bankruptcy Code;" payments to critical trade vendors have further support when debtor seeks "the extension of credit under section 364 on different than usual terms, terms that might include the payment of a prepetition obligation").

24.    In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may permit payments of prepetition obligations when essential to the continued operation of the debtor's business. Specifically, the Court may use its power under section 105(a) to authorize payment of prepetition obligations

pursuant to the "necessity of payment" rule, also referred to as the "doctrine of necessity."

25.     The "doctrine of necessity" or the "necessity of payment" rule originated in railway cases was first articulated by the United States Supreme Court in *Miltenberger v. Logansport, C.&S.W.R. Co.*, 106 U.S. 286 (1882). The doctrine was expanded to non-railroad debtors in the mid-twentieth century. *See Dudley v. Mealey*, 147 F.2d 268, 271 (2nd Cir. 1945) (holding, in hotel reorganization case, that the court was not "helpless" to apply the rule to supply creditors of non-railroad debtors where alternative was cessation of operations). The Third Circuit recognizes the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11, even though such payment is not explicitly authorized under the Bankruptcy Code. *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing *In re Lehigh & New England Rwy. Co.*, 657 F.2d 570, 581 (3rdCir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized.'"); see also *In re Just for Feet, Inc.*, 242 B.R. 821, 825-26 (D. Del. 1999) ("The necessity of payment doctrine recognizes that paying certain pre-petition claims may be necessary to realize the goal of Chapter 11 -- a successful reorganization.").

26.     Today, the rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases -- is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176); *In re Just for Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re*

*Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that allowance of "unequal treatment of pre-petition debts when necessary for rehabilitation . . ." is appropriate); *In re CEI Roofing*, 315 B.R. 50, 61 (Bankr. N.D. Tex. 2004) (recognizing the importance of payment of pre-petition wages and employee benefits to the reorganization process).

27.     Importantly, courts also have permitted post-petition payment of prepetition claims pursuant to section 105(a) of the Bankruptcy Code in other situations, such as if nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtor's reorganization. *In re UNR Indus.*, 143 B.R. 516, 520 (Bankr. N.D. Ill. 1992) (permitting debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtor's successful reorganization); *Ionosphere*, 98 B.R. at 177 (finding that section 105 of the Bankruptcy Code empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

28.     This flexible approach is particularly critical where a prepetition creditor provides vital goods or services to a debtor that would be unavailable if the debtor did not satisfy its prepetition obligations.  In *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the bankruptcy court stated that it "may exercise its equity powers under §105(a) [of the Bankruptcy Code] to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of survival of the debtors and payment of creditors in full or at least proportionately.'"  *Id*. (citations omitted).  The court explained that "*a per se* rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code."  *Id.* at 932.

29.     This Motion satisfies the criteria set forth above, as the relief sought herein is essential to the Debtor's reorganization, and payment of the Vendor Claims is warranted as a reasonable exercise of the Trustee's business judgment. Here, the Debtor's ability to continue operating without disruption to its completion of its construction projects and fulfill its customer agreements would be significantly impaired without the essential Services and/or Supplies provided by the Subcontractors and Vendors. Failure to obtain Services and/or Supplies from the Subcontractors and Vendors post-petition would result in unsustainable delays and the loss of customers and employees, which would jeopardize the Debtor's reorganization efforts.  It is essential that the Trustee be permitted immediately to pay the Vendor Claims to ensure that Subcontractors' and Vendors' delivery of Services and/or Supplies to the Debtor remains constant, timely, and efficient. The Trustee submits that the relief requested is narrowly tailored to ensure the Debtor's continued business operations which will ultimately benefit the Debtor's reorganization process.

30.     Granting the relief requested herein is appropriate and in the best interest of the Debtor, its estate, creditors and customers.  Nothing in this Motion, however, shall be construed as an admission or to limit or in any way affect the Trustee's or any party in interest ability to contest any Vendor Claim on any grounds, and the Trustee expressly reserves all rights with respect thereto.

**B.   Payment of the Critical Vendor Claims Is Authorized Under
       Bankruptcy Code Sections 1107(a) and 1108.**

31.     The Trustee, operating the Debtor's business is a fiduciary "holding the bankruptcy estate[s] and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 trustee is the duty "to protect and preserve the estate, including an operating

business's going-concern value." *Id.*

32.     Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," and also when the payment was to "sole suppliers of a given product." *Id*. at 497-98. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id*. at 498.

33.     Payment of the Vendor Claims meets each element of the *CoServ* court's standard. First, as described above, alternative providers would be difficult, and in certain instances, nearly impossible to find, in a timely fashion to timely complete the Debtor's Projects. Any disruption in the Debtor's construction scheduling as a result of non-payment of the Vendor Claims would significantly disrupt the Debtor's business by causing the Debtor to miss completion deadlines which, in turn, would adversely impact the Debtor's customer goodwill.

34.     Second, a disruption of the Debtor's operations would cost the Debtor's estate significant lost revenues. The harm and economic disadvantage that would stem from the failure to pay the Vendor Claims is disproportionate to the amount of the prepetition claims that would have to be paid. Without the Services and/or Supplies necessary for the Debtor's continued operation, the Debtor's ability to preserve and maximize the value of the Debtor's estate would be

severely impaired.  Therefore, it is especially important that the Debtor maintains a positive relationship with the Subcontractors and Vendors to ensure it obtains the necessary Service and/or Supplies to ensure no disruption or interruption to its operations.

35.    Third, the Debtor has examined other options short of paying the Vendor Claims and have determined that to avoid significant disruption of the Debtor's business operations there exists no practical alternative to payment of the Vendor Claims.  After all, the Subcontractors and Vendors are the only source from which the Debtor can procure the Services and/or Supplies of a required quality, within a timeframe, and at a price that will permit the Debtor to continue to maintain and complete its construction projects.  Absent payment of the Vendor Claims, the Trustee believes the Subcontractors and Vendors are likely to cease to provide such Services and/or Supplies to the Debtor post-petition.

36.    In order to maintain the continuity of its business and to preserve assets and going concern value for the benefit of its creditors and interest holders, it is essential that the Trustee be authorized to pay the Vendor Claims to the Subcontractors and Vendors as requested through this Motion.  The Trustee seeks the relief requested in this Motion as any delay or disruption in obtaining the Services and/or Supplies required to fulfill its construction agreements would significantly diminish the Debtor's ability to fulfill its constructions contracts. The failure to complete its current contracts timely will cause the loss of the Debtor's ability to continue as a going concern.  In short, the Debtor faces the real and immediate risk that its operations will be severely impaired if authority is not granted for the Trustee to make the payments described above.

37.    Without preserving the Debtor's construction processes in a "business as usual" manner, the Debtor will be unable to fulfill its current contracts and those it reasonably anticipates in the near future. Failure to preserve the project pipeline will eliminate the Debtor's ability to reorganize.

38.    Therefore, the Trustee requests authority to pay such portion of the Vendor Claims as necessary in his discretion to maintain the current and future operations of the Debtor's business.

## THE DEBTOR SATISFIES BANKRUPTCY RULE 6003

39.    Bankruptcy Rule 6003 provides that to the extent "relief is necessary to avoid immediate and irreparable harm" a Bankruptcy Court may approve a motion to "pay all or part of a claim that arose before the filing of the petition" prior to twenty-one days after the Petition Date. As set forth above, the payment of the Vendor Claims is imperative to prevent the immediate and irreparable harm to the Debtor's operations, going concern value, confidence of the Debtor's customers, Subcontractors and Vendors, and, thus, Debtor's ability to reorganize in general. Accordingly, the Trustee submits that ample cause exists to justify the immediate entry and effect of an order granting the relief sought herein as contemplated by Bankruptcy Rule 6003, and requests that the Court find that the provisions of same are satisfied.

## REQUEST FOR WAIVER OF STAY

40.    To the extent that the relief sought in the Motion constitutes a use of property under Bankruptcy Code § 363(b), the Trustee seeks a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).

## NOTICE

41.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the Debtor and its counsel; (iii) the Debtor's secured creditors; (iv) any party whose interests are directly affected by this specific pleading; (v) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (vi) counsel for and the members of any official committees appointed by this Court; (vii) the consolidated 20 largest unsecured creditors of the Debtor; and (viii) all governmental agencies having a regulatory or statutory interest in these cases. No other or further

notice need be provided.

## PRAYER

WHEREFORE the Trustee respectfully requests that his Motion be approved by this Court under the terms specified above, and for such other and further relief to which he may show himself to be justly entitled.

Respectfully submitted,

/s/ Mark A. Weisbart
Mark A. Weisbart
Texas Bar No. 21102650
James S. Brouner
Texas Bar No. 03087285
HAYWARD PLLC
10501 N Central Expy, Suite 106
Dallas, TX 75231
(972) 755-7103 Phone/Fax
MWeisbart@HaywardFirm.com
JBrouner@HaywardFirm.com

PROPOSED COUNSEL FOR SUBCHAPTER V TRUSTEE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing instrument was served on the parties listed on the attached mailing matrix either through the Court's electronic notification system as permitted by Appendix 5005 to the Local Rules of the U.S. Bankruptcy Court for the Eastern District of Texas, or by first class United States Mail, postage prepaid this 4th day of May 2022.

/s/ Mark A. Weisbart
Mark A. Weisbart

**CRITICAL VENDORS**

Service One LLC 22-40503

| VENDOR | AMOUNT |
|---|---|
| A.C.E Companies | $ 1,505.00 |
| Alfredo Gallardo | $ 6,887.00 |
| AME | $ 13,963.23 |
| Angel Carrillo | $ 9,450.00 |
| Annie Olachia | $ 2,444.50 |
| AR Multiple Services | $ 1,220.00 |
| Bezaleel Hernandez | $ 1,260.00 |
| Bryan N Vega | $ 1,139.00 |
| Complete Paint | $ 250.00 |
| Creations Granite & Marble | $ 20,430.68 |
| Daniel Grigsby | $ 6,275.00 |
| Elvis Alfaro - RF Painting and Remodeling | $ 2,000.00 |
| Eric Castellon | $ 200.00 |
| Fix It Right Plumbing | $ 16,650.00 |
| Garcia's Cleaning- Angela A. Baca Garcia | $ 1,670.00 |
| Gerardo Marquez Calahorra | $ 2,162.00 |
| Glass FX | $ 110,433.28 |
| Guadalupe Buendia-Bocanegra | $ 4,913.00 |
| Jacobo Garza | $ 2,000.00 |
| Janson Saravia | $ 7,251.00 |
| Jennifer Melissa Rivera | $ 275.00 |
| Jesus Contreras | $ 10,000.00 |
| Jorge Artunduaga | $ 5,162.00 |
| Jose Manuel Muñoz | $ 6,750.00 |
| Jose Portillo | $ 13,500.00 |
| Juan A Chavez | $ 2,500.00 |
| Juan Carlos Flores | $ 600.00 |
| Juan Guevara | $ 12,927.00 |
| Lagniappe Exterminating | $ 1,407.24 |
| Landers Carpet Care | $ 413.56 |
| Lucia Villalta | $ 1,262.00 |
| Luis Nolasco | $ 4,510.20 |

| | | |
|---|---|---|
| M S International | $ | 24,642.05 |
| Maria G Chaidez-M&M Remodeling | $ | 2,879.00 |
| Maria Martinez | $ | 1,100.00 |
| Maria Torres | $ | 2,360.00 |
| Metro's Best Residential and Commercial Cleaning Services, LLC | $ | 450.00 |
| MFS Supply | $ | 42,197.88 |
| Milan Predikant | $ | 8,017.00 |
| Nathan Sanders | $ | 450.00 |
| Nortier Engineering Consultants LLC | $ | 1,350.00 |
| NxTGen | $ | 525.00 |
| Paychex | $ | 1,598.57 |
| River Dean Shade Co LLC | $ | 147.61 |
| Rosa Jimenez | $ | 2,375.00 |
| Sherwin Williams (Acc't 6288-6) | $ | 55,600.06 |
| Sherwin  Williams (Acc't 7487-2) | $ | 50,071.33 |
| Star Window Covering | $ | 13,018.47 |
| Surface Professionals | $ | 2,925.00 |
| TaskEasy, Inc. | $ | 1,405.34 |
| Texas Appliances | $ | 19,421.13 |
| Texas Solution Heating & Cooling | $ | 9,000.00 |
| Trash Chomper | $ | 92,663.45 |
| Two Js Tree and Maintenance-Juan Arreozola | $ | 20,806.60 |
| TXU Energy | $ | 482.41 |
| Whitworth Engineering | $ | 5,811.00 |
| William Adams | $ | 4,400.00 |

Exhibit "A"

Label Matrix for local noticing
0540-4
Case 22-40503
Eastern District of Texas
Sherman
Wed May  4 15:16:03 CDT 2022

22 Bass Street LLC
4901 Keller Springs Road, #105
Addison, TX 75001-6238

7 Sky Roofing
Attn: Brendan O'Connor
6302 Windcrest Drive, # 925
Plano, TX 75024-3013

7 Sky Roofing
Attn: Brendan O'Connor
6302 Windcrest Drive, #925
Plano, TX 75024-3013

A.C.E Companies
541 County Road 4106
Crandall, TX 75114-5007

ADR Plumbing Co.
Attn: Paul Brake
3324 Welch Lane
Sachse, TX 75048-3187

AMDG Consultants, LLC
8711 S. FM 148
Scurry, TX 75158-2525

AME G.C., LLC
1671 River View Dr., #B207
Lewisville, TX 75056-4813

AR Multiple Services
6519 Linden Lane
Dallas, TX 75230-1409

Aaron Atwell
PO Box 151
6637 W. Hwy 199
Springtown, TX 76082-5147

Action Plumbing
121 Touchstone Road
Wylie, TX 75098-7528

Addison-Keller Springs, Ltd.
c/o Dryden Company
Attn: Erik Jensen
4849 Keller Springs
Addison, TX 75001-5912

William Todd Albin
5665 Dallas Parkway, Suite 200
Frisco, TX 75034-7373

Alfredo Gallardo
2608 Squire Place
Dallas, TX 75234-4775

American Express
Customer Service
PO Box 981535
El Paso, TX 79998-1535

American Express
PO Box 981535
El Paso, TX 79998-1535

Angel Carrillo
1205 Hillcrest St., 1221
Mesquite, TX 75149-2103

Annie Olachia
1027 Grandview Ave.
Dallas, TX 75223-1515

Arbor Contract Carpet, Inc.
PO Box 675096
Dallas, TX 75267-5096

Atwell Heat & Air
PO Box 151
Springtown, TX 76082-0151

Beauty Lounge Inc.
9201 Warren Parkway, Suite 200
Frisco, TX 75035-6242

Bezaleel Hernandez
1306 W Lavander Ln.
Arlington, TX 76013-5018

Blue Cross Blue Shield of TX
PO Box 650615
Dallas, TX 75265-0615

(p)BLUEVINE ANDY SHAW
ATTN BLUEVINE/ANDY SHAW
401 WARREN ST SUITE 300
REDWOOD CITY CA 94063-1578

Brandon Vega
510 Lydia Ct.
Irving, TX 75061-6261

James S. Brouner
Hayward PLLC
10501 N Central Expy, Suite 106
Dallas, TX 75231-2203

Bryan N. Vega
510 Lydia Ct.
Irving, TX 75061-6261

Bryan Ramirez
3210 Konet St.
Irving, TX 75060-4815

CT Corporation
PO Box 4349
Carol Stream, IL 60197-4349

Charles Tomasello
7936 Bishop Rd.
Plano, TX 75024-4016

Christopher Johnson
701 Skelly St.
Crowley, TX 76036-2315

(p)CITY OF DALLAS
C O CITY SECRETARYS OFFICE
DALLAS CITY HALL
1500 MARILLA STREET ROOM 5D SOUTH
DALLAS TX 75201-6390

City of Grand Prairie
300 W. Main Street
Grand Prairie, TX 75050-5621


Complete Paint
518 NE 42nd Terrace
Kansas City, MO 64116-4527

Creations Granite & Marble
1726 Oldfield Dr.
Dallas, TX 75217-1433

Cristian Alexander Aparicio
1035 Bigwood St.
Dallas, TX 75211-2534


Dallas County
Linebarger Goggan Blair & Sampson, LLP
c/o Laurie A. Spindler
2777 N. Stemmons Frwy
Suite 1000
Dallas, TX 75207-2328

Dallas County
Linebarger, Goggan, Blair & Sampson, LLP
c/o Laurie A. Spindler
2777 N. Stemmons Freeway
Suite 1000
Dallas, TX 75207-2328

Damaris Prock
2116 Navada Way
Justin, TX 76247-6723


Daniel Grigsby
927 Willow Circle N
Burleson, TX 76028-5122

Danny Tipton
604 Blevins
Fort Worth, TX 76111-4704

(p)DELL FINANCIAL SERVICES
P O BOX 81577
AUSTIN TX 78708-1577


Michael Durrschmidt
1415 Louisiana, 36th Floor
Houston, TX 77002-7360

Dustin Barnes
1708 Usa Drive
Plano, TX 75025-2650

Elvis Alfaro-RF Painting and Remodeling
1509 Drexel Dr.
Irving, TX 75061-7860


Epifanio Gonzalez
13354 Emily Rd.
Dallas, TX 75240-5978

Ferguson
PO Box 847411
Dallas, TX 75284-7411

First Corporate Solutions
914 S. Street
Sacramento, CA 95811-7025


Fix It Right Plumbing
PO Box 1201
Burleson, TX 76097-1201

GE Appliances
PO Box 840136
Dallas, TX 75284-0136

Garcia's Cleaning-Angela A. Baca Garcia
1329 East Anthony Street
Fort Worth, TX 76115-1801


Gerardo Marquez Calahorra
1116 Rice Street
Grand Prairie, TX 75050-5961

Glass FX, LLC
1671 Riverview Dr.
Colony, TX 75056-4813

Goodman Distribution
4800 Keller Springs Road
Addison, TX 75001-6053


Guadalupe Buendia-Bocanegra
2236 Meadowlark
Irving, TX 75060-7236

Hazael Fernando Miranda
602 Ashby Court
Allen, TX 75002-4711

Hernandez Multi Contracting LLC
4801 Keller Springs Rd.
Addison, TX 75001-5912


Home Depot Credit Services
PO Box 790340
St. Louis, MO 63179-0340

Hunter Jones
5324 Wagon Wheel Circle
Log Cabin, TX 75148-3559

Insco Distributing, Inc
12501 Network Blvd.
San Antonio, TX 78249-3306

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Jacob Garza
8814 Cardella Ave.
Dallas, TX 75217-4241

Janson Saravia
2721 Sagebrush
Irving, TX 75060-7810

Jennifer Melissa Rivera
3222 Norwalk Ave.
Dallas, TX 75220-4875

Jesus Contreras
900 Via Balboa
Mesquite, TX 75150-3014

Jill Woodruff
500 Energy Way, Apt. #2121
Fort Worth, TX 76102-2699

John Mongogna
Albin & Oldner
5665 Dallas Parkway, Suite 200
Frisco, TX 75034-7373

Jorge Artunduaga
5711 Preston Oaks Rd.
Dallas, TX 75254-9000

Jose Manuel Muoz
900 Via Balboa
Mesquite, TX 75150-3014

Jose Portillo
2901 Runnels St.
Fort Worth, TX 76106-7459

Jose Rodriguez
119 Virginia St.
Irving, TX 75061-7558

Juan A. Chavez
9600 Wickersham Road, Apt. 1143
Dallas, TX 75238-3173

Juan Carlos Flores
9622 Rolling Rock Lane, 270E
Dallas, TX 75238-3048

Juan Guevara
2420 Cambridge Dr.
Irving, TX 75061-6606

Julio Jimenez
4605 Carr St.
The Colony, TX 75056-3124

Justin Braden
123 Sandlewood Ln.
Burleson, TX 76028

Koetke Consulting LLC
120 N South Rd., Unit C
PMB 162
North Conway, NH 03860-5267

Lagniappe Exterminating
1362 Sandhurst Drive
Roanoke, TX 76262-1379

Landers Carpet Care
946 Fairlawn Dr.
Duncanville, TX 75116-3004

Larry Wendt
3232 E. Adams, Apt. 27
Arlington, TX 76010

Lucia Villalta
1521 Grantbrook Lane
Dallas, TX 75228-5127

Luis Nolasco
2641 W. Northgate Drive
Irving, TX 75062

Lupita Chavez
109 Centennial Drive
Lewisville, TX 75067-4513

M S International, Inc.
12845 Valley Branch Lane
Farmers Branch, TX 75234-5813

M&C Multiservices LLC
6224 Kentwood Place
Fort Worth, TX 76112-3126

MFS Supply
31100 Solon Road, Suite 16
Solon, OH 44139-3463

Maria G. Chaidez/M&M Remodeling
3304 Rolling Hills Lane
Grand Prairie, TX 75052-7069

Maria Martinez
2206 San Pablo Dr.
Dallas, TX 75227-8738

Maria Torres
2875 Bois D Arc Road
Combine, TX 75159-4745

Mario Guapo
930 Town Square
Princeton, TX 75407-8902

Brandi J. McKay
Brown Fox PLLC
6303 Cowboys Way
Suite 450
Friso, TX 75034-1956

Merit Professional Services
PO Box 271712
Flower Mound, TX 75027-1712

Metro's Best Residential and
Commercial Cleaning Services, LLC
1408 Laguna Vista Way
Grapevine, TX 76051-4950

Milan Predikant
2031 Peters Cove
Carrollton, TX 75007-3530

Mitchell Holder
3762 Ashley Ct.
Fort Worth, TX 76123-1301

Morosco Supply
PO Box 841183
Dallas, TX 75284-1183

Christopher J. Moser
Quilling Selander Lownds Winslett Moser
2001 Bryan Street
Suite 1800
Dallas, TX 75201-3070

Nace & Motley, LLP
Attn: Kristi Motley
100 Crescent Court, 7th Floor
Dallas, TX 75201-6900

Nathan Sanders
124 Woolard Drive
Alvarado, TX 76009-8009

National Contract Flooring
PO Box 21437
Little Rock, AR 72221-1437

Nortier Engineering Consultants LLC
1902 Forest Glen Lane
Weatherford, TX 76087-8758

NxTGen
PO Box 271152
Dallas, TX 75227-1152

Octavio's Cabinets
1503 E. Mitchell
Arlington, TX 76010-3005

Office of the U.S. Trustee
110 N. College Ave., Suite 300
Tyler, Texas 75702-7231

Oliverio Lima
506 Alto Drive
Garland, TX 75040-8019

Omar Miranda
10905 Damon Lane
Dallas, TX 75229-3839

PLS Check Cashers Of Texas, Inc.
800 Jorie Blvd., Ste. 200
Oak Brook, IL 60523-2132

Faizan (Frank) S. Patel
Quilling Selander Lownds Winslett Moser
2001 Bryan Street
Ste 1800
Dallas, TX 75201-3070

Patrick Schultz
4321 Belvedere Drive
Plano,  TX 75093-6966

Plains Capital Bank
1 Cowboys Way, Unit 250
Frisco, TX 75034-2002

PlainsCapital Bank
c/o Hirsch & Westheimer, P.C.
1415 Louisiana St.
Suite 3600
Houston, TX 77002-7394

Procraft Cabinetry
2330 Alberta Dr., Ste. 100
Dallas, TX 75229-2063

RM Interiors TX LLC
2925 N. Norwalk
Mesa, AZ 85215-1131

Ron Ramos
Brown Fox Law PLLC
c/o Brandi J. McKay
6303 Cowboys Way
Suite 450
Frisco, TX 75034-1956

Riley O'Connor
6302 Windcrest Drive, Apt. #925
Plano, TX 75024-3013

River Dean Shade Co LLC
5020 Sharp Street
Dallas, TX 75247-6018

Ronnie Ramos
18210 Village Drive
Saucier, MS 39574-6510

Rosa Jimenez
300 North Booth Calloway Road, #208
Hurst, TX 76053-7241

Ryan Haggard
324 Jasmine Ct.
Burleson, TX 76028-5311

S&A Backhoe & Septic Service LLC
106 Mesa Street
Weatherford, TX 76086-4671

Marcus Salitore
US Trustee Office
110 N. College Ave., Room 300
Tyler, TX 75702-7231

Salvador Garcia (Fernando)
4807 North Colony
The Colony, TX 75056

Sandra Perry
9201 Warren Parkway, Suite 200
Frisco, TX 75035-6242

Scheef & Stone, LLP
Attn: T. Chase Garrett
2600 Network Blvd., Suite 400
Frisco, TX 75034-6010

Patrick S. Schultz
Brown Fox Law PLLC
c/o Brandi J. McKay
6303 Cowboys Way
Suite 450
Frisco, TX 75034-1956

Patrick J. Schurr
Scheef & Stone, L.L.P.
2600 Network Boulevard
Suite 400
Frisco, TX 75034-6010

Section Stack
2920 Telecom Parkway, #125
Richardson, TX 75082-0273

Service One, LLC
4801 Keller Springs Road
Addison, TX 75001-5912

Sherwin Williams (6288-6)
909 Gross Road
Mesquite, TX 75149-2100

Sherwin Williams (7487-2)
909 Gross Road
Mesquite, TX 75149-2100

Spielberger Law Group
Attn: Gary Martoccio
4890 W. Kennedy Blvd., Ste. 950
Tampa, FL 33609-1867

Laurie A. Spindler
Linebarger, Goggan, Blair & Sampson
2777 N. Stemmons Frwy Ste 1000
Dallas, TX 75207-2328

Star Window Coverings LLC
2030 East Arbrook Blvd., Ste. 180
Arlington, TX 76014-3798

Stephen Rios
6322 Meadowcrest Lane
Sachse, TX 75048-5512

Surface Professionals
2133 Spur Trail
Grapevine, TX 76051-4642

(p)TXU ENERGY RETAIL COMPANY LP
CO BANKRUPTCY DEPARTMENT
PO BOX 650393
DALLAS TX 75265-0393

TaskEasy, Inc.
669 S. West Temple, Suite 300
Salt Lake City, UT 84101-2725

Texas Appliance & Builder Supply
1500 East Interstate 20
Arlington, TX 76018-4801

Thompson & Horton LLP
3200 Southwest Freeway, Ste. 2000
Houston, TX 77027-7554

Tina Lewandowski
1544 Hickory Trail
Allen, TX 75002-4517

Charles Tomasello
c/o Jon Strain
SCHEEF & STONE, LLP
2600 Network Boulevard
Suite 400
Frisco, TX 75034-6010

Toni Glowinski
10429 W. Palmer Ave.
Melrose Park, IL 60164-1845

Torio Construction LLC
3239 Torio
Grand Prairie, TX 75054-6780

Trash Chomper LLC
4801 Keller Springs Road
Addison, TX 75001-5912

Two Js Tree and Maintenance
Attn: Juan Arreozola
2625 Riviera Drive
Garland, TX 75040-4332

U Fix It Appliance Parts
4621 South Cooper Street, #127
Arlington, TX 76017-5856

U.S. Attorney General
Department of Justice
Main Justice Building
10th & Constitution Ave., NW
Washington, DC 20530-0001

U.S. Small Business Administration
10737 Gateway West, #300
El Paso, TX 79935-4910

U.S. Small Business Administration
409 Third St., SW
Washington, DC 20416-0002

US Trustee
Office of the U.S. Trustee
110 N. College Ave.
Suite 300
Tyler, TX 75702-7231

Mark A WEISBART (SBRA V)
Subchapter V Trustee
10501 N Central Expy Suite 106
Dallas, TX 75231-2203

WEX Fleet Universal
PO Box 4337
Carol Stream, IL 60197-4337

Waterfall Bath Enclosures
1312 W. Crosby Rd.
Carrollton, TX 75006-6908

(p)MARK A  WEISBART
ATTN THE LAW OFFICE OF MARK A WEISBART
10501 N CENTRAL EXPY SUITE 106
DALLAS TX 75231-2203

White's & Sons
DBA All Pro Pest Control Services
2533 Franklin Drive, Suite 2B
Mesquite, TX 75150-6310

Whitworth Engineering
5700 Lionfish Way
Fort Worth, TX 76131-1900

William Adams
1002 East Business 380
Decatur, TX 76234-3152

Wolters Kluwer
PO Box 4349
Carol Stream, IL 60197-4349


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

BlueVine Capital Inc.
401 Warren Street
Redwood City, CA 94063

City of Dallas
City Hall 2D, South
Dallas, TX 75277

Dell Financial
One Dell Way
Round Rock, TX 78682

TXU Energy
PO Box 650638
Dallas, TX 75265

Mark A. Weisbart
Hayward PLLC
10501 N Central Expy Suite 106
Dallas, TX 75231-2203


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d)ADR Plumbing Co.
Attn: Paul Brake
3324 Welch Lane
Sachse, TX 75048-3187

(d)Arbor Contract Carpet, Inc.
PO Box 675096
Dallas, TX 75267-5096

(d)Creations Granite & Marble
1726 Oldfield Dr.
Dallas, TX 75217-1433

(d)Ferguson
PO Box 847411
Dallas, TX 75284-7411

(d)Fix It Right Plumbing
PO Box 1201
Burleson, TX 76097-1201

(d)Glass FX, LLC
1671 Riverview Dr.
Colony, TX 75056-4813

(d)Hernandez Multi Contracting LLC
4801 Keller Springs Rd.
Addison, TX 75001-5912

(d)Home Depot Credit Services
PO Box 790340
St. Louis, MO 63179-0340

(d)Jesus Contreras
900 Via Balboa
Mesquite, TX 75150-3014

(d)Jose Portillo
2901 Runnels St.
Fort Worth, TX 76106-7459

(d)S International, Inc.
12845 Valley Branch Lane
Farmers Branch, TX 75234-5813

(d)MFS Supply
31100 Solon Road, Suite 16
Solon, OH 44139-3463

(d)Morosco Supply
PO Box 841183
Dallas, TX 75284-1183

(u)Sandra Perry

(d)Sherwin Williams (6288-6)
909 Gross Road
Mesquite, TX 75149-2100

(d)Sherwin Williams (7487-2)
909 Gross Road
Mesquite, TX 75149-2100

(d)Star Window Coverings LLC
2030 East Arbrook Blvd., Ste. 180
Arlington, TX 76014-3798

(d)Trash Chomper LLC
4801 Keller Springs Road
Addison, TX 75001-5912

End of Label Matrix
Mailable recipients  157
Bypassed recipients   18
Total                175