**Receive free daily summaries of new opinions from the Supreme Court of Texas.**

# DELL EDWARD JAMES, Appellant v. COMMISSION FOR LAWYER DISCIPLINE, Appellee

AFFIRMED; Opinion Filed April 5, 2010.

In The
Court of Appeals
Fifth District of Texas at Dallas

............................

No. 05-08-01553-CV

............................

DELL EDWARD JAMES, Appellant
V.
COMMISSION FOR LAWYER DISCIPLINE, Appellee

......................................................

On Appeal from the 416th District Court
Collin County, Texas
Trial Court Cause No. 416-04033-07

..................................................
OPINION

Before Justices Richter, Murphy, and Myers

Opinion By Justice Myers

Dell Edward James appeals the default judgment ordering his disbarment from the practice of law. Appellant argues the trial court erred in rendering the default judgment for disbarment because: (a) the trial court lacked subject-matter jurisdiction over the case; (b) the trial court lacked personal jurisdiction over appellant; (c) the judgment did not conform to the pleadings; and (d) the sanction of disbarment was excessive. Appellant also contends the trial court erred in not granting appellant's motion for new trial. We affirm the trial court's judgment.

BACKGROUND

On November 26, 2007, the Commission for Lawyer Discipline filed its original petition seeking the disciplining of appellant for violations of Texas Disciplinary Rules of Professional Conduct in his representation of Thomas Rush. On January 11, 2008, the Commission filed its first amended petition seeking appellant's disciplining for violating the rules of professional conduct in his representation of Rush and Ruth Grisales. Citation was issued for the original and first amended petitions. The process server made five attempts to serve appellant between January 14 and 31, 2008 by going to appellant's usual place of business and the Collin County Courthouse when appellant had a hearing scheduled, but he was unable to serve appellant.

On April 15, 2008, the Commission filed its second amended petition alleging violations of the rules of professional conduct in appellant's representation of Rush and Grisales. When the process server tried unsuccessfully four more times to serve appellant with the second amended petition at his usual place of business, the Commission filed a motion for substituted service. On May 21, 2008, the trial court granted the motion and authorized substituted service on appellant "by leaving a true copy of the citation, with a copy of the Second Amended Disciplinary Petition, with anyone over sixteen years of age at Respondent's usual place of business, which is 5700 Granite Parkway, Suite 281, Plano Texas 75024." George Weis filed an affidavit of service stating he served appellant on June 4, 2008, "by delivering to Jenna Pecor, a person sixteen (16) years or older, a true and correct copy of the above mentioned documents at the Defendant's usual place of business at 5700 Granite Parkway, Suite 281, Plano, TX 75024, per Order Granting Petitioner's Second Motion for Substitute Service of Process, having first endorsed thereon the date of the delivery."

On August 5, 2008, appellant had not filed an answer, and the Commission moved for a default judgment, which the trial court granted, finding appellant violated the rules of

professional conduct. After a hearing that included testimony from Rush and Grisales and evidence appellant had received a public reprimand in 2005, the trial court rendered judgment that (a) appellant was disbarred and his license to practice law was revoked, (b) permanently enjoined appellant from practicing law, (c) ordered appellant to take particular actions for the protection of his clients and the public, and (d) ordered him to pay restitution to Rush and Grisales and attorney's fees and costs to the Commission.

On August 7, 2008, appellant filed an answer in the suit, and he filed a motion for new trial on August 12, 2008. No hearing was held on the motion for new trial, which was overruled by operation of law.

SUBJECT MATTER JURISDICTION

Appellant contends the trial court lacked subject-matter jurisdiction over the cause because the Commission did not plead and prove the disciplinary petition was filed within sixty days of appellant's election to have a trial in district court.

After a complaint filed against an attorney is determined to be supported by just cause, the attorney is given written notice of the allegations and rule violations. See Tex. R. Disciplinary P. 2.12-.14, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A-1 (Vernon 2005). The attorney then has twenty days to elect in writing to have the complaint heard in a district court or before an evidentiary panel of the District Grievance Committee. Tex. R. Disciplinary P. 2.15. If the attorney timely elects a trial in district court, the Chief Disciplinary Counsel must file the disciplinary petition within sixty days. Tex. R. Disciplinary P. 3.01.

Appellant argues the trial court lacked subject-matter jurisdiction because the Commission did not plead or prove that the disciplinary petition was filed within sixty days of appellant's election to have the action tried in district court. Not all statutory prerequisites for suit are jurisdictional. See Igal v. Brightsar Info. Tech. Group., Inc., 250 S.W.3d 78, 84 (Tex. 2008). Whether a filing requirement is jurisdictional is a question of statutory interpretation to determine whether the legislature intended the consequences of making the requirement jurisdictional. Id. Rule 3.01 provides,

If the Respondent timely elects to have the Complaint heard by a district court, with or without a jury, in accordance with Rule 2.15, the Chief Disciplinary Counsel shall file not more than sixty days after receipt of Respondent's election to proceed in district court a Disciplinary Petition in the name of the Commission with the Clerk of the Supreme Court of Texas.

Tex. R. Disciplinary P. 3.01. The rule then describes the matters that must be pleaded in the disciplinary petition. Rule 3.01 does not require the Commission to plead compliance with

the sixty-day filing requirement. Nothing in the rule indicates the legislature intended that the sixty-day filing requirement be jurisdictional. Accordingly, the Commission's failure to plead and prove that the disciplinary petition was filed within sixty days of appellant's election did not deprive the trial court of subject-matter jurisdiction over the cause. We overrule appellant's issue challenging the trial court's subject-matter jurisdiction.

PERSONAL JURISDICTION

Appellant next contends the trial court erred in entering the default judgment because the court lacked personal jurisdiction. Appellant asserts the trial court erred in authorizing substituted service, the court's order for substituted service was void, and the citation was void.

Appellant first argues the trial court erred in ordering substituted service. Service of process, including substituted service, is governed by Texas Rule of Civil Procedure 106:

(a) Unless the citation or an order of the court otherwise directs, the citation shall be served by any person authorized by Rule 103 by

(1) delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto, or

(2) mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached thereto.

(b) Upon motion supported by affidavit stating the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and stating specifically the facts showing that service has been attempted under either (a)(1) or (a)(2) at the location named in such affidavit but has not been successful, the court may authorize service

(1) by leaving a true copy of the citation, with a copy of the petition attached, with anyone

over sixteen years of age at the location specified in such affidavit, or

(2) in any other manner that the affidavit or other evidence before the court shows will be reasonably effective to give the defendant notice of the suit.

Tex. R. Civ. P. 106. Appellant first asserts the Commission did not comply with paragraph (b) because the affidavit in support of the Commission's motion for substituted service did not sufficiently establish appellant's usual place of business.

In the affidavit, the process server, Weis, testified, "Respondent's usual place of business is 5700 Granite Parkway, Suite 281, Plano Texas, 75027." Weis then described his four unsuccessful attempts to serve appellant in April and May 2008. Weis stated that on each occasion, he went to appellant's usual place of business, and the receptionist told him appellant was not in the office. Weis left his business card with the receptionist and asked her to have appellant call him to arrange delivery of the documents. In his description of the May 2, 2008 attempted service, Weis stated the receptionist told him she had given appellant Weis's telephone number. Weis stated he had not received any telephone calls or messages from appellant as of May 13, 2008, the date of the affidavit.

Appellant argues the affidavit was insufficient to show the Granite Parkway address was his "usual place of business." Appellant asserts Weis's statement that the address was appellant's usual place of business was conclusory and not supported by probative evidence as required by this Court's opinion in Garrels v. Wales Transportation, Inc., 706 S.W.2d 757 (Tex. App.-Dallas 1986, no writ). We disagree with appellant's interpretation that Garrells required additional evidence to support the affiant's statement of the address of the defendant's usual place of abode or business. In Garrells, the plaintiff's unsworn motion for substituted service stated a particular address was the defendant's home address, but the supporting affidavit did not include such a statement. Id. at 758-59; see Tex. R. Civ. P. 106. Concluding the unsworn motion was insufficient, this Court stated that before the trial court may order substituted service under rule 106, "there must be evidence of probative value that the location stated in the affidavit is the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found." Id. at 759. Garrells did not require the affidavit to state how the affiant concluded the address was the usual place of business or abode of the defendant; it required the affidavit, as opposed to only an unsworn motion, state the address was the defendant's usual place of business or abode. See Pao v. Brays Vill. E. Homeowners Ass'n, Inc., 905 S.W.2d 35, 37 (Tex. App.-Houston [1st Dist.] 1995, no writ).

Appellant also argues the facts stated in the affidavit do not establish the address was appellant's usual place of business because the affidavit showed only that the receptionist said appellant was not there and she did not know when he would return. Citing Coronado v. Norman, 111 S.W.3d 838 (Tex. App.-Eastland 2003, pet. denied), appellant asserts the affidavit had to show the process server asked when he would be in or where he would be located. In Coronado, the affidavit in support of the motion for substituted service stated the process server "made more than 6 visits" to the defendant's usual place of abode and was told on each occasion that the defendant "resided at such address but that he was not there." Id. at 840. The court concluded the affidavit was insufficient because it did not contain the specific dates and times that service was attempted. Id. at 842. As the court observed, "Every attempt may have been while appellant was at work. When told that appellant 'was not there,' the process server apparently did not try to find out where appellant could be located or when he would return." Id. The court stated that the process server did not inquire about the defendant's whereabouts or expected return, but it did not hold that such an inquiry was necessary. See id. In this case, the affidavit stated the specific dates and times Weis tried to serve appellant at the Granite Parkway address. Also, the receptionist's response that she did not know when appellant would return indicates Weis did inquire when appellant would return. Thus, Coronado is distinguishable.

Appellant also argues the affidavit was insufficient because it did not show Weis tried to serve appellant anywhere other than his usual place of business or attempted to find appellant through any other method. Rule 106 does not require that personal service be attempted at multiple locations before the trial court may authorize substituted service, and appellant cites no authority in support of this argument.

Appellant also argues the order for substituted service was void because it did not specify the manner for the proof of service. Rule of civil procedure 107 governs the return of service, and it states, "Where citation is executed by an alternative method as authorized by Rule 106, proof of service shall be made in the manner ordered by the court." Tex. R. Civ. P. 107. The trial court's order for substituted service did not prescribe a manner for the proof of service, and appellant argues that omission rendered the order for substituted service void. We disagree. In Pao, the court faced the same issue and stated, "We hold that, in the absence of a specification in the trial court's rule 106 order of a different manner of proving service, proof of service in the normal manner authorized by rule 107 is sufficient." Pao, 905 S.W.2d at 38. Appellant does not complain that the proof of service did not comply with rule 107. We conclude appellant's argument that the order for substituted service is void for failing to specify the manner of service lacks merit.

Appellant next argues the order for substituted service was void because it did not state the name of the disinterested adult who was to serve process, citing Ex parte Wood, 590

S.W.2d 568 (Tex. Civ. App.-Houston [1st Dist.] 1979, orig. proceeding). In that case, the court held the failure of the order for substituted service to specify the identity of the process server was "fatal to the acquisition of in personam jurisdiction" because rule 106(e) specifically required that "service is to be effected by any disinterested adult named by the court in its order." Id. at 569. Rule 106 no longer requires the order to state the name of the person authorized to serve process. Thus, Ex parte Wood is not applicable. Appellant's argument lacks merit.

Appellant next argues the citation was void because it stated, "Said Plaintiff's Petition was filed in said court . . . on November 26, 2007, in this case, numbered 4160403307 on the docket of said court." See Footnote 1 November 26, 2007 was the date the original petition was filed; the second amended petition, which was the document served with the citation, was filed April 15, 2008. Rule of civil procedure 99(b) governs the form of the citation, and it requires the citation "show date of filing of the petition." Tex. R. Civ. P. 99(b)(4). Appellant argues the citation failed to meet this requirement because it did not show the filing date for the version of the petition served with the citation, the second amended petition. The Commission argues the citation met the requirement because it showed the date of the filing of the original petition, which it asserts is the relevant date for rule 99(b)(4).

We conclude that the citation was not void for stating the date of the filing of the original petition instead of the amended petition served with the citation. The filing of the original petition marks the trial court's acquisition of jurisdiction over the suit. See Perry v. Del Rio, 66 S.W.3d 239, 252 (Tex. 2001); In re Henry, 274 S.W.3d 185, 191 (Tex. App.-Houston [1st Dist.] 2008, pet. denied). Generally, it is from the filing date of the original petition that the statute of limitations is determined. Tex. Civ. Prac. & Rem. Code Ann. §§ 16.001-.072 (Vernon 2002 & Supp. 2009). The filing of the original petition usually marks the beginning of the discovery period. See Tex. R. Civ. P. 190.2(c)(1), 190.3(b)(1). The rules do not require that the citation itself bear the date of any subsequent pleadings served; however, if the defendant required notice of the filing date of the amended petition served with the citation, that date should be stamped on the petition. See Tex. R. Civ. P. 24.

We conclude appellant has not established the trial court lack personal jurisdiction. We overrule appellant's issues asserting the trial court lacked personal jurisdiction.
JUDGMENT'S CONFORMANCE TO THE PLEADING

Appellant next complains the default judgment is invalid because the default judgment did not conform to the pleadings. A trial court's judgment must conform to the pleadings filed in the case. Tex. R. Civ. P. 301; Steinberg v. Comm'n for Lawyer Discipline, 180 S.W.3d 352, 358 (Tex. App.-Dallas 2005, no pet.).

The judgment in this case awarded the Commission injunctive relief by ordering that

appellant

is permanently enjoined from practicing law in Texas, holding himself out as an attorney, performing any legal services for others, accepting any fee directly or indirectly for legal services, appearing as counsel or in any representative capacity in any Texas court or before any Texas administrative body, or holding himself out to others or using his name in any matter in conjunction with the words "attorney," "attorney at law," "counselor at law," or "lawyer" effective August 5th, 2008.

The second amended petition's prayer stated, "Petitioner prays for judgment that Respondent be disciplined, as the facts shall warrant; and that Petitioner have such other relief to which entitled, including direct expenses, costs of Court, and reasonable attorneys' fees and legal assistant fees." Appellant asserts the petition did not specifically request disbarment or injunctive relief, and that the judgment cannot award injunctive relief unless it was specifically requested. We disagree.   The Commission's pleading followed the requirement of rule of disciplinary procedure 3.01(F) that the disciplinary petition contain "[a] demand for judgment that the Respondent be disciplined as warranted by the facts and for any other appropriate relief." Tex. R. Disciplinary P. 3.01(F). The rules do not require the petition to state the level of sanction requested. The rules of disciplinary procedure recognize eight types of "sanction[s]," including disbarment. See Tex. R. Disciplinary P. 1.06(Y). By praying that appellant be "disciplined, as the facts shall warrant," the Commission was praying for all appropriate sanctions to be imposed, including disbarment.

When disbarment or suspension is the assessed sanction, rule of disciplinary procedure 3.11 states that the court "shall enjoin the Respondent from practicing law or from holding himself or herself out as an attorney eligible to practice law during the period of disbarment or suspension." Id. 3.11. A pleading for disbarment "is necessarily to plead for injunctive relief because the very essence of a disbarment is that the person is barred (i.e., enjoined) from practicing law." Worldpeace v. Comm'n for Lawyer Discipline, 183 S.W.3d 451, 457 (Tex. App.-Houston [14th Dist.] 2005, pet. denied). By pleading that appellant be "disciplined," the Commission placed appellant on notice that disbarment, with its mandatory injunctions, was amongst the relief sought by the Commission.

Accordingly, we conclude the judgment of disbarment conformed to the pleadings, and we overrule appellant's issue asserting the judgment does not conform to the pleadings.
MOTION FOR NEW TRIAL

Appellant next contends the trial court erred in failing to grant his motion for new trial. Appellant's motion for new trial asserts his failure to answer the Commission's disciplinary

petition was due to accident or mistake and not conscious indifference, that he has a meritorious defense to the Commission's allegations, and that the granting of the motion for new trial will not work an injury to the Commission. See Craddock v. Sunshine Bus Lines, 134 Tex. 388, 393, 133 S.W.2d 124, 126 (Tex. 1939); Zaidi v. Comm'n for Lawyer Discipline, 252 S.W.3d 421, 424 (Tex. App.-Houston [1st Dist.] 2002, no pet.).

We review a trial court's ruling on a motion for new trial for an abuse of discretion. Dolgencorp of Tex., Inc. v. Lerma, 288 S.W.3d 922, 926 (Tex. 2009); Mobilevision Imaging Servs., L.L.C. v. LifeCare Hosps. of N. Tex., L.P., 260 S.W.3d 561, 564 (Tex. App.-Dallas 2008, no pet.). We may not overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. Landerman v. State Bar of Tex., 247 S.W.3d 426, 433 (Tex. App.-Dallas 2008, pet. denied). When a movant for new trial from a default judgment makes no effort to have the motion set for a hearing or otherwise to draw the trial court's attention to the motion, and the movant allows the motion to be overruled by operation of law, the trial court does not abuse its discretion in permitting the motion to be overruled by operation of law. Fluty v. Simmons Co., 835 S.W.2d 664, 666-68 (Tex. App.-Dallas 1992, no writ); Shamrock Roofing Supply, Inc. v. Mercantile Nat'l Bank, 703 S.W.2d 356, 357-58 (Tex. App.-Dallas 1985, no writ); see also Weiss v. JPMorgan Chase Bank, N.A., 05-06-00940-CV, 2007 WL 2069627, at *3 (Tex. App.-Dallas July 20, 2007, pet. denied) (mem. op.).

In this case, there was no hearing on the motion for new trial. The motion itself did not request a hearing, and the record does not show appellant attempted to have the motion set for a hearing.  See Footnote 2  We conclude appellant has not shown the trial court abused its discretion in failing to grant his motion for new trial.

We overrule appellant's issue asserting the trial court erred in failing to grant his motion for new trial.

SANCTION OF DISBARMENT

In his final issue, appellant asserts the trial court abused its discretion in rendering the sanction of disbarment. Appellant asserts disbarment was an excessive sanction under the evidence before the court of his misconduct.

The trial court has broad discretion to determine the appropriate sanction in an attorney disciplinary action. State Bar of Tex. v. Kilpatrick, 874 S.W.2d 656, 659 (Tex. 1994). In determining the appropriate sanction, the trial court considers the factors listed in rule of disciplinary procedure 3.10:

In determining the appropriate Sanctions, the court shall consider:
A. The nature and degree of the Professional Misconduct for which the Respondent is being sanctioned;

B. The seriousness of and circumstances surrounding the Professional Misconduct;

C. The loss or damage to clients;

D. The damage to the profession;

E. The assurance that those who seek legal services in the future will be insulated from the type of Professional Misconduct found;

F. The profit to the attorney;

G. The avoidance of repetition;
H. The deterrent effect on others;

I. The maintenance of respect for the legal profession;

J. The conduct of the Respondent during the course of the Committee action;

K. The trial of the case; and

L. Other relevant evidence concerning the Respondent's personal and professional background.

In addition, the Respondent's disciplinary record, including any private reprimands, is admissible on the appropriate Sanction to be imposed.

Tex. R. Disciplinary P. 3.10.

    After finding appellant was in default and he had committed misconduct, the court held an evidentiary hearing to determine the appropriate sanction. The Commission introduced evidence that appellant received a public reprimand in 2005 for violating rules of professional conduct 1.03(a) and (b). See Footnote 3 Appellant was also ordered to pay restitution to the injured client of $14,483.24.

    Ruth Grisales testified she hired appellant's law firm in May 2005 to pursue her claim for damages against her employer after she was injured at work. The contract provided that another attorney in the firm would represent Grisales. The case settled for $28,000 in November 2006, but Grisales was not notified. When Grisales had not heard anything from the firm by spring of 2007, she called the firm. The legal assistant told Grisales her case had been settled and that Grisales needed to talk to appellant. After Grisales made "many, many calls" to appellant without him responding, he finally answered her call and told her the case had settled. Grisales asked why she had not been informed or allowed to decide on the settlement, but appellant evaded her question. Appellant agreed to meet with Grisales. At their meeting, appellant agreed to meet with her again and bring her check. When appellant did not contact her about the meeting time, Grisales sent him a letter on June 26, 2007 stating appellant had seven days to contact her or she would file a complaint with the State Bar of Texas. Appellant then contacted Grisales and agreed to bring her check to her workplace in early July. Appellant brought a handwritten check for Grisales. Grisales told appellant the check was for the wrong amount, and appellant explained the shortfall was to cover $4000 of Grisales's outstanding medical bills. Grisales said she did not have any outstanding medical bills. Grisales asked to see the settlement agreement and the disbursement statement, but appellant did not have them with him. Grisales refused to accept the check. They met again on July 22, 2007, and Grisales told appellant the check he

brought was still too small for the amount she was due. Again, appellant did not bring the settlement agreement or disbursement statement, and Grisales told appellant she would not accept a check until she saw them. Appellant apologized and promised to send the documents to her immediately; however, Grisales testified she never received either the documents or the check. She testified she was owed $18,200 after deduction of the firm's thirty-five percent contingency fee. Counsel for the Commission asked Grisales if appellant's handling of her case affected her view of attorneys and the legal system, and she answered, "Very much so. I feel violated. He violated my trust. I hired him to protect my rights and to represent me and he-I feel violated." When asked what she thought should happen to appellant, she stated, "He shouldn't be practicing. He'll be doing this to a lot of people."

Thomas Rush testified he hired appellant's firm in February 2005 to represent him after he was injured in an automobile accident. Rush met with another attorney at appellant's firm who told him appellant would handle the trial and settlement. At that initial meeting, Rush told the attorney what he considered an appropriate settlement amount. In August 2005, the attorney called Rush and asked if he would settle for $6000; Rush refused, stating the amount was below the settlement amount they discussed. The attorney agreed to go back to appellant and see if they could get Rush a better settlement. Rush did not hear anything more for about a year. When the statute of limitations was about to run on his claim, he began calling the firm. Rush left several messages for appellant. The law firm's staff told Rush that appellant was personally handling the case, appellant had Rush's file, that no one else in the firm could help Rush, and that appellant would call him. Appellant did not call. In February 2007, about a week before the statute of limitations expired, Rush began calling several times a day until the receptionist gave Rush appellant's cell phone number. When Rush called appellant's cell phone, appellant answered and apologized for not returning his phone calls and said he had been sick; appellant promised to call Rush that afternoon. When appellant called Rush, he said he had just gotten off the phone with the insurance company, and that the most the case could be settled for was $8000. Rush testified that he agreed to accept that amount "out of desperation." Appellant promised to get a check for the settlement to Rush within thirty days. Forty days later, when Rush had not heard from appellant or received a check, he called appellant, who said he had a check for him. They agreed to meet the following Monday at noon. Shortly before the meeting, another lawyer from the firm called Rush and told him appellant was tied up in court and would not be able to meet with him. The attorney said appellant had Rush's check in his briefcase and the check would be brought to Rush the following Monday. When the check was not delivered the next Monday or the next week, Rush called the insurance company with whom appellant said he had settled the case

in February 2007 for $8000 and learned the case had been settled in August 2005 for $11,000 and that the file was closed. Rush asked the insurance company to send him a copy of the check. Rush testified the check had been made out to him and appellant's firm and that his endorsement had been forged on the check. Rush then filed a complaint with the State Bar of Texas. Rush sent a certified letter to appellant demanding payment, and Rush personally delivered a copy of the letter to appellant's secretary. Appellant never responded. Rush testified he was owed $7337 after deduction of the firm's contingency fee. At the conclusion of his testimony, counsel for the Commission asked Rush if the way appellant handled his case affected his view of attorneys and the legal system, and Rush answered, "Well, I lost a lot of faith and confidence in the legal system. I don't think I'll ever again fully trust an attorney."

After the Commission rested, counsel for the Commission argued the factors under section 3.10 of the rules of disciplinary procedure showing how each applied to appellant's conduct. The trial court stated that each of the twelve factors "has come into play in [appellant's] conduct . . . ." The court stated that after taking into consideration all matters, including appellant's disciplinary record, "the Court has no qualms and has no problem in ordering [appellant's] disbarment."

Appellant argues that disbarment under these facts is an excessive sanction. He asserts it was the fault of other attorneys in the firm who failed to contact Grisales after her case settled and that he did contact her after receiving her letter. Appellant states their subsequent disagreement over the amount of the check was a disagreement over the amount of the firm's fee, which appellant asserts does not warrant disbarment. Concerning Rush, appellant asserts Rush's testimony showed it was other attorneys who met with him and told him appellant would be handling his case and that Rush never spoke to appellant to confirm that appellant would be representing him. Appellant also asserts the evidence showed Rush received an adequate settlement because he agreed to accept a settlement of $8000 and the firm had settled the case for $11,000. Appellant argues the evidence showed he was not the attorney who Grisales and Rush hired or that he had agreed to represent them. He asserts the evidence showed he made attempts to pay them. He argues that if he was guilty of any rule violation, it was for failing to supervise the other attorneys, which was not alleged in the disciplinary petition. Appellant asserts that "[m]any more egregious actions by attorneys have not resulted in such harsh action, but rather with fines or suspensions"; however, he cites no supporting authority for this assertion.

Rush's testimony showed appellant said he would be representing Rush in settlement negotiations with the insurance company. Grisales's and Rush's testimony showed that even if appellant did not represent them, he was the custodian of their settlement funds. As such, he had a duty to communicate timely with them about the settlements and to give

them their funds, which he failed to do. See Tex. Disciplinary R. Prof'l Conduct 1.14(b), 1.15(d). He had to provide them an accounting for their funds, which he failed to do. See id. 1.04(d), 1.14(b). The trial court could conclude from Rush's testimony that appellant accepted a settlement of his case without consulting him. See id. 1.02(a)(2). Grisales's and Rush's testimony showed appellant ignored their attempts to communicate with him and their reasonable requests for information. See id. 1.03(a). Grisales's and Rush's testimony showed appellant lied to them and cheated them. See id. 8.03(a)(3) ("A lawyer shall not . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ."). His actions, as testified to by Grisales and Rush, constituted repeated, egregious breaches of his fiduciary duties to multiple clients. Applying the twelve considerations listed under rule of disciplinary procedure 3.10, we cannot conclude the trial court abused its discretion in determining disbarment was an appropriate sanction.

Appellant argues disbarment is inappropriate in a default setting because he "was never allowed to produce evidence to rebut the allegations made by the [Commission], nor was he given a chance to explain his professional background as a mitigating circumstances." Appellant cites no authority in support of this argument. Furthermore, appellant was not deprived of any rights. He was served with the suit by substituted service. To preserve his right to produce evidence and explain his professional background, all he had to do was to file an answer before the default judgment was entered. He failed to do so.

We conclude the trial court did not abuse its discretion in ordering appellant disbarred, and we overrule appellant's issue asserting the sanction of disbarment was excessive.

We affirm the trial court's judgment.

LANA MYERS
JUSTICE

081553F.P05

Footnote 1 In his appellant's brief and reply brief, appellant purports to quote the citation as stating, "Plaintiff's Second Amended Petition was filed on the docket of said Court on November 26, 2007." Appellant's quotation is not accurate.

Footnote 2 Appellant asserts an email in the clerk's record showed he requested a hearing. The email is from someone named "Diane Powell," and the signature line, "Diane/416th District Court," indicates she is part of the staff of the trial court. The email is addressed to "Sylvia Powell," and nothing indicates her position or affiliation with the case. The email

reads,

Sylvia,

The above referenced case keeps coming back to me for me to set a hearing on the Motion for New [T]rial. It is my understanding they are appealing the case. Would you please ask Judge Medina [the appointed judge, see Tex. R. Disciplinary P. 3.02] if there is anything I need to do. Do I just send it back to the clerk's office or does he want me to scan the order denying the new trial to him to sign. Thanks for your help.
Diane/416th District Court

The email does not show appellant requested a hearing. The email was dated November 24, 2008, which was 111 days after the final judgment, 36 days after the motion for new trial had been overruled by operation of law, and 6 days after the trial court's plenary power had expired. Even if the email indicated appellant had requested a hearing on the motion for new trial, it did not show he did so before the motion was overruled by operation of law. Footnote 3 See Tex. Disciplinary R. Prof'l Conduct 1.03, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9):

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.